PERLEY LOWE, Assignee,

*v.*

CANUTE R. MATSON *et al.*

*Filed at Springfield January 15, 1892.*

1. INSOLVENT DEBTOR — *voluntary assignment — property vests in assignee.* By a general assignment of an insolvent debtor under the act relating to voluntary assignments for the benefit of creditors, the title to all real and personal property of the assignor vests in the assignee, whether mentioned in the deed of assignment or not; and it is his duty to reduce the property to possession, and administer the fund, under the direction of the county court, and for this purpose he will be entitled to a reasonable time in which to gain such possession.

2. SAME—*assignee of—reducing personal property to possession.* An assignee, under the statute relating to assignments for the benefit of creditors, does not occupy the same position toward the assigned personal estate as a purchaser of such property, within the rule that a sale of chattels unaccompanied by a change of possession is fraudulent in law as to creditors of the vendor. He stands in the position of a trustee holding the assigned estate for the benefit of all creditors of the assignor.

3. SAME—*assignee will have reasonable time to reduce property to possession, as against execution creditors.* The rule of law that a sale of chattels unaccompanied by a change of possession is fraudulent *per se* as to execution creditors or subsequent purchasers of the vendor, does not apply to the ordinary purchase and sale of chattel property, when the possession of the vendor is consistent with the deed of sale, or when the sale is of such a public character as to give notoriety thereto. For this reason the rule has no application to assignments for the benefit of creditors. In such case the assignee has a reasonable time in which to reduce the property to possession, as against liens or executions issued after the execution and delivery of the deed of assignment. The want of an immediate change of possession is a circumstance from which fraud may be inferred, susceptible, however, of being contradicted by proof.

4. An insolvent debtor executed, acknowledged and delivered a general assignment of all his property on September 21, 1889, which was recorded on the 23d of the same month, but it was not filed with the county clerk until the 27th of that month. On the forenoon of the 23d of the same month two executions were issued against the assignor and levied on a part of the personal property included in the assignment. On September 30, 1889, the assignee filed his petition in the county court to have the levies set aside, which the court dismissed: *Held,* that the assignee had the right to have the levies set aside, and to subject the assigned property to the payment of the several creditors of the assignor.

5. SALE OF PERSONAL PROPERTY — *possession by former owner — whether fraudulent per se.* Where the transfer of personal property is founded on a good consideration, and there is no intention, in fact, to defraud creditors, the legal presumption of fraud, created by the non-delivery of possession, does not arise, if the transfer or transaction is a matter of publicity or notoriety. So the retaining of possession by a defendant in execution after a sale of personal property by an officer is not fraudulent *per se* as to creditors, because of the publicity of such sale; and when, after default of a chattel mortgagor, a sale of the property under the mortgage is had, and purchased by a third party, and the purchaser leaves the property in the possession of the mortgagor, such possession is not fraudulent *per se* as to creditors of the mortgagor.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. JONES & HACKER, for the appellant:

The deed was recorded before executions reached the sheriff, and the assignee had actual possession before the sheriff attempted to obtain it. Burrill on Assignments, (4th ed.) secs. 271-273, 276, 278; *Clapp's Assignee* v. *Shirk*, 13 Pa. St. 589; *Wilson* v. *Pearson*, 20 Ill. 81; *Thornton* v. *Davenport*, 1 Scam. 296; *Thompson* v. *Yeck*, 21 Ill. 73; *Blatchford* v. *Boyden*, 122 id. 657; *Long* v. *Cockern*, 128 id. 30; *Allen* v. *Carr*, 85 id. 388.

A deed of assignment takes effect as soon as it is executed and delivered.

The law gives the assignee a reasonable time to take possession. Burrill on Assignments, secs. 258, 259, 278, 279.

The assignment becomes immediately operative and takes full effect on delivery. Burrill on Assignments, sec. 296; *Walker* v. *Newlin*, 22 Kan. 106; *Stamp* v. *Case*, 41 Mich. 267; *Fiske* v. *Carr*, 20 Me. 301; *Crosby* v. *Hilyer*, 24 Wend. 280.

The county court had full authority in the premises, and such authority related back to date of deed. *Hanchett* v. *Waterbury*, 115 Ill. 220; *Freydendall* v. *Baldwin*, 103 id. 325.

Messrs. M. & H. N. CULVER, for the appellees:

The judgment of the county court was correct, as shown by *Preston* v. *Spaulding*, 120 Ill. 232, and *Hanchett* v. *Waterbury*, 115 id. 220.

The Superior Court first obtained jurisdiction by virtue of its executions, and can not be ousted.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was a petition by appellant, against the sheriff of Cook county and certain execution creditors of Robert Larkins, praying that said sheriff be ordered to surrender to the peti-

tioner "lumber and materials" theretofore levied upon under executions in favor of said creditors. The petition also prayed that S. A. Kean & Co. be ordered to release an attachment levied on lumber in Lagrange county, Indiana, but that branch of the case has ceased to be of practical importance to the parties to this record, and need not be further noticed. The petition was dismissed in the county court, and that judgment affirmed in the Appellate Court.

It appears that an assignment for the benefit of creditors was, on Saturday, the 21st day of September, 1889, duly executed, acknowledged and delivered by Robert Larkins to Nathaniel M. Jones, as assignee, in conformity with the provisions of the statute of this State relating to voluntary assignments. The property assigned, as described in the schedule attached to the deed, was "lumber and material at yard * * * in Chicago, valued at $45,000," and also certain lumber in Lagrange county, Indiana. This deed of assignment, with the attached schedules, was filed for record in the recorder's office in Cook county on the following Monday, being September 23, at ten o'clock A. M. About 10:50 o'clock A. M. of the same day the assignee informed one Stephens, book-keeper of Larkins, in charge of the office at said Chicago yard, by telephone, of the assignment, ordering him to sell no more lumber, to take charge of the yard for him, and at once prepare a statement of Larkins' creditors; also, informing him he would be at the yard between one and two o'clock that afternoon. Stephens thereupon stopped a delivery of lumber then being made, and proceeded to make the required list of creditors. The same forenoon two executions against Larkins, assigned to S. A. Kean & Co., came to the hands of the sheriff of Cook county, one indorsed received at 10:14 o'clock A. M., and the other at 10:20 o'clock A. M., both of which were, about one hour after the telephone message by the assignee to Stephens, levied upon all the lumber and material in said Chicago yard. The judgments on which these executions issued

were entered by confession in the Superior Court of Cook county the same forenoon. In the afternoon of that day three other executions were delivered to said sheriff and levied on the same property, but in the view we take of the case the rights of the parties are not affected by these levies. On September 27, at 2:15 o'clock P. M., the assignment was filed with the county clerk of Cook county. Thereupon the assignee, Jones, presented his resignation to the county court of that county, which was accepted, and appellant appointed his successor, and he immediately qualified and gave bond. On the 30th of said month he filed this petition. His contention is, that under the deed of assignment he is entitled to the property in question, to be administered upon by the county court of Cook county for the benefit of all the creditors of the assignor, Larkins, free from any liens or priority in said execution creditors. This right appellees deny, but insist that even if it exists, said county court had no jurisdiction to enforce it on this petition. This denial of jurisdiction is based upon the proposition that that court did not acquire jurisdiction of the assigned estate until the deed was filed with its clerk, September 27, at which time the Superior Court had become vested with jurisdiction over the property by virtue of the liens of said executions, and the levy of the same by said sheriff. Hence it is said, the latter court has the right to proceed under said writs to convert the property into money, for the benefit of the creditors claiming under them.

Several decisions of this court are cited as authority supporting this position, but they are clearly distinguishable from this case. That the property seized by the sheriff was specifically described in the deed of assignment in this case is not denied. The county court therefore obtained jurisdiction over it upon the filing of that deed with its clerk, subject only to the liens and just claims of third parties. (*Hanchett* v. *Waterbury,* 115 Ill. 228.) The only question here to be tried is, did the writs of execution become liens in the hands of the sheriff

on the property seized, as against the assignee, or did said
execution creditors thereby obtain a priority over the general'
creditors of the assignor, the theory of the petition being, that
said property was not subject to execution at the time said
writs came into the sheriff's hands. Suppose the assignee had
taken manual possession of the property, but the sheriff had
levied upon it prior to the filing of the deed with the county
clerk; would there have been any doubt as to the power of the
county court to remove the levies and subject the property to
distribution among the general creditors? Certainly not.
The theory of the petition is, that the property passed to the
assignee under the facts therein alleged, even though actual
possession by him was not acquired prior to the time the writs
were received by the sheriff. If that position can be main-
tained we have no doubt that the county court had full juris-
diction in the premises.

Did the mere fact that the assignee had not taken actual
possession of the assigned property before the writs came to
the hands of the sheriff, render the assignment fraudulent
*per se* as to those execution creditors? The contention of the
appellees is, that an assignee, under our statute regulating
voluntary assignments for the benefit of creditors, occupies
the same position toward the assigned personal estate as does
a purchaser of such property, within the rule that a sale of
chattels unaccompanied by a change of possession is fraudu-
lent in law, and void as to creditors of the vendor. We do not
concur in this view. Such an assignee stands in the position
of a trustee, holding the assigned estate for the benefit of all
creditors of the assignor. In a general assignment, the title
to all real and personal property of the assignor vests in the
assignee, whether mentioned in the deed of assignment or not,
and it is his duty to reduce it to possession, and make distri-
bution thereof under the directions of the county court, and
for that reason alone it would seem that the statute contem-
plated that he should have a reasonable time in which to gain

8—140 ILL.

such possession. This case, as well as others of frequent occurrence, will show the necessity of this construction in order to give practical effect to the objects and purposes of the statute. Property assigned is often in different localities and in the hands of different custodians at the time the deed is executed, rendering it impracticable to make an immediate delivery.

But the rule contended for by appellees does not apply even to the ordinary purchase and sale of chattel property when the possession of the vendor is consistent with the deed of sale, or when the sale is of such a public character as to give notoriety thereto, and for these reasons it has been often held that it has no application to assignments for the benefit of creditors. Thus, in the note to *Twyne's case*, 1 Smith's Lead. Cases, 1, it is said: "Upon the whole the principle established in the courts of the United States seems to be, that the transaction is fraudulent in law, and void against creditors, if the possession be retained by the owner or his bailee, without notice of transfer served, inconsistently with the purpose, trust and appropriation of the property, as fixed by the legal operation of the deed; that in absolute sales the possession must be delivered in a reasonable time, for the nature and purpose of the transaction require it; but in mortgages, and other conveyances not absolute, possession may be retained without fraud, for that is not inconsistent with the object, design and nature of the transaction." In the same note it is said: "A conveyance in trust for creditors is another instance of a transfer not absolute to which the exception applies that possession consistent with the terms and object of the deed is not legal fraud, though it is admitted to be a circumstance from which fraud may be inferred, susceptible of being counteracted by proof." *Vernon* v. *Morton & Smith*, 8 Dana, 247; *Christopher* v. *Covington & Smith*, 2 B. Mon. 357; *Mitchell* v. *Wellock*, 2 W. & S. 253; *Klapp's Assignee* v. *Shirk*, 1 Pa. St. 589. This view is also sustained by *Stamp* v. *Case*, 41 Mich.

267; *Johnson* v. *Sharp*, 31 Ohio St. 611; *Ingraham* v. *Wheeler*, 6 Conn. 267; *Welt* v. *Franklin*, 1 Binn. 502; 2 Am. Decs. 474; *Goodwin* v. *Kerr*, 80 Mo. 276.

In Chitty on Contracts (7th Am. ed. p. 412,) the author says: "And when the transfer is founded on a good consideration, and there is no intention in fact to defraud creditors, the legal presumption of fraud created by the non-delivery of possession does not arise if the transfer or transaction were a matter of publicity or notoriety. * * * If the assignment be notorious, fraud can not be inferred from the omission to take possession."

Retaining possession by a defendant in execution after a sale of personal property by an officer is not fraudulent *per se* as to creditors, because of the publicity of such sales. (*Boardman* v. *Keeler*, 1 Aikens, 158, and many other cases which might be cited.) In a note to the *Boardman case*, reported in volume 15 of American Decisions, it is said: "For the same reason, when debtors make assignments for the benefit of creditors, and the assignee thereafter, in pursuance of public notice, sells the property at auction, the purchaser may, according to the decided weight of authority, safely allow the goods to remain with the assignor." This court held in *Hanford* v. *Obrecht*, 49 Ill. 146, when, after default of a chattel mortgagor, a sale of the property under the mortgage is had, and purchased by a third party, and he leaves it in the possession of the mortgagor, such possession is not fraudulent *per se* as to creditors of the mortgagor.

The statute provides that assignments shall be duly acknowledged and "recorded in the county where the person or persons making the same reside, or where the business in respect of which the same is made has been carried on." This acknowledging and recording is evidently intended to give a publicity to the transaction, and operate as constructive notice to all the world that an assignment has been made. If immediate

possession by the assignee is essential to the validity of the assignment, recording the deed serves no purpose whatever.

We think, under the statute, the title to the assigned estate passed to the assignee upon the execution, acknowledgment, delivery and recording of the deed, with the right to reduce the same to possession within a reasonable time, even as against creditors of the assignor, and that possession by the assignor after such delivery is at most but evidence of fraud. Here there is no pretense that the assignment was fraudulent in fact. Neither is it claimed that there was any understanding between the assignee and assignor that the latter was to retain possession of the property, or that he attempted or claimed the right to do so. The assignee acted with reasonable diligence in his efforts to get possession. The most that can be said is, that after the deed was executed and delivered to him, he was beaten in a race between himself and these creditors to get possession.

We are of the opinion that the law of this case is with the appellant, and that the judgment of the county court dismissing his petition was erroneous. Its judgment and that of the Appellate Court will be reversed, and the cause will be remanded to said county court, with directions to proceed in conformity with the views herein expressed.

*Judgment reversed.*

Mr. Justice Craig: I do not concur in this judgment. In my opinion the execution creditor, by the levy on the property under the execution before there had been any change of possession and before the assignee took possession, acquired a prior lien.