SUPERIOR PARTNERS, Plaintiff-Appellant, v. PROFESSIONAL EDUCATION NETWORK, INC., Defendant-Appellee.

First District (4th Division)   No. 85—1123

Opinion filed November 14, 1985.—Rehearing denied December 13, 1985.

Richard J. Daley and Martin Mussar, both of Pierce, Daley, Baffes &

O'Sullivan, of Chicago, for appellant.

Lowell B. Komie, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Superior Partners, appeals from the judgment of the circuit court of Cook County finding that certain personal property located on premises leased to defendant, Professional Education Network, Inc., was not subject to distraint for rent because, prior to its seizure under a distress warrant, the property had been sold to a third party. Plaintiff contends that the contract to sell the property was not enforceable because it violated the statute of frauds, and that, assuming that the contract was enforceable, the purported sale was fraudulent because the buyer failed to take possession of the property before it was seized under the distress warrant.

Plaintiff leased office space to defendant which, due to financial difficulties, failed to pay rent for several months. On February 16, 1985, Robert H. Block, plaintiff's building manager, met with Robert S. Levy and Richard Friedman, two of defendant's corporate officers. Levy testified that Friedman informed Block that defendant was discontinuing its business operations and was disposing of its assets. According to Levy, Block agreed to allow defendant's personal property, consisting of office furniture and equipment, to remain on the premises until it had been sold. Levy advised Block that he expected to sell the property to the Chicago Tourism Council and that one of its representatives was going to inspect the property on February 18, 1985. Following the inspection, the Chicago Tourism Council, on February 26, 1985, purchased the property for $2,000. At trial, Levy identified a bill of sale, which was dated February 26, 1985, and which was signed by Richard Friedman on defendant's behalf. (The bill of sale has not been included in the record on appeal.) On the same date, Levy left a message with Block's office that the Chicago Tourism Council had purchased the property.

Levy testified further that on March 11, 1985, he had a telephone conversation with Block in which he told him that the buyer was attempting to make arrangements to pick up the property. When Block asked Levy whether the property had been sold, Levy confirmed that it had been sold "some time ago" and that the buyer wanted to take possession. Block expressed his dissatisfaction with the transaction and stated that he might not allow the property to be removed from the premises. On March 14, 1985, the Chicago Tourism Council issued a check to defendant in the amount of $2,000, which Levy picked up at

the Council's office on the same date. Defendant introduced a letter from the Chicago Tourism Council dated March 21, 1985, into evidence which confirmed the details of the purchase and indicated an intention to take possession of the property that had been sold. (The letter has not been included in the record on appeal.) Before the Council could remove the property from the premises, plaintiff, on March 15, 1985, filed a distress for rent action against defendant and seized the office furniture and equipment. Defendant was served with summons on March 19, 1985.

Robert H. Block, testifying for plaintiff, denied that he had agreed to let defendant's property remain on the premises until it had been sold. Block also stated that he had no knowledge of the purported sale before the distress for rent action was filed.

Following an evidentiary hearing on April 9, 1985, the trial court entered judgment for defendant. The court found that on February 26, 1985, defendant had entered into a contract to sell the office furniture and equipment to the Chicago Tourism Council, had given to the Council a bill of sale identifying the property and reflecting the sale price of $2,000, and had advised plaintiff that the property had been sold; and that on March 11, 1985, which was four days before plaintiff filed its distress for rent action, defendant again had notified plaintiff that the property had been sold. This appeal follows.

Plaintiff contends that the contract to sell the property was not enforceable because it violated the statute of frauds and that, assuming that the contract was enforceable, the purported sale was fraudulent because the buyer failed to take possession of the property because it was seized under the distress warrant.

Section 9—301 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 9—301) provides:

> "In all cases of distress for rent, the landlord *** may seize for rent any personal property of his *** tenant that may be found in the county where such tenant resides, and in no case shall the property of any other person, although the same may be found on the premises, be liable to seizure for rent due from such tenant."

The language of this provision is general and is not subject to construction—in no case shall the property of any other person be seized. (*Howdyshell v. Gary* (1886), 21 Ill. App. 288, 291; *Schiller Park Compressed Steel Corp. v. Boerema* (1977), 45 Ill. App. 3d 343, 347, 359 N.E.2d 852.) The landlord's right to seize the tenant's personal property for rent must be determined by the ownership of the property sought to be reached at the time of seizure, and it is not material that

the property formerly belonged to the tenant or that it remains on the leased premises. (*Howdyshell v. Gary* (1886), 21 Ill. App. 288, 291; see also *Cottrell v. Gerson* (1938), 296 Ill. App. 412, 421-22, 16 N.E.2d 529, *aff'd* (1939), 371 Ill. 174, 20 N.E.2d 74, and the cases cited therein.) If the property has by a legal sale and delivery passed to another, it is not subject to seizure under the distress warrant against the goods of the tenant. *Howdyshell v. Gary* (1886), 21 Ill. App. 288, 291.

The trial court found that on February 26, 1985, defendant entered into a contract to sell the office furniture and equipment to the Chicago Tourism Council. In our judgment, this finding was amply supported by the evidence. Plaintiff, however, contends that the contract was not enforceable because it violated the Statute of Frauds. (Ill. Rev. Stat. 1983, ch. 26, par. 2—201(1).) We find no merit in this contention.

Subsection 2—201(1) of the Uniform Commercial Code (the Code) provides in pertinent part:

"[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." Ill. Rev. Stat. 1983, ch. 26, par. 2—201(1).

Plaintiff submits that defendant, as seller, could not enforce the contract for sale against the Chicago Tourism Council, as buyer, because the bill of sale (the only "writing" evidencing a contract for the sale of goods) was not signed by a representative of the buyer. We note, however, that the failure to satisfy the requirements of subsection 2—201(1) does not render the contract void for all purposes but merely prevents it from being judicially enforced in favor of a party to the contract. (Ill. Ann. Stat., ch. 26, par. 2—201, Uniform Commercial Code Comment, at 115 (Smith-Hurd 1963).) A stranger to the contract cannot invoke the statute. (Ill. Ann. Stat., ch. 26, par. 2—201, Illinois Code Comment, at 110 (Smith-Hurd 1963).) It is apparent, therefore, that plaintiff, who was not a party to the contract, cannot rely upon the statute of frauds to challenge the enforceability of the contract.

Moreover, under subsection 2—201(3)(c) of the Code, a contract, which does not satisfy the requirements of subsection (1) but which is valid in other respects, is enforceable "with respect to goods for which payment has been made and accepted ***." (Ill. Rev. Stat. 1983, ch. 26, par. 2—201(3)(c).) Robert S. Levy testified that on March 14, 1985, which was one day before plaintiff filed its distress for rent action against defendant, he picked up a check from the offices of the Chicago Tourism Council in full payment of the property that defend-

ant had sold to the Council. Delivery of a check by the buyer to the seller constitutes a "payment" within the meaning of subsection 2—201(3)(c). (See *Miller v. Wooters* (1985), 131 Ill. App. 3d 682, 684-85, 476 N.E.2d 11, and the authorities cited therein.) In light of the foregoing, it is evident that at the time plaintiff filed its distress for rent action, both defendant and the Chicago Tourism Council were bound by an enforceable contract for the sale of goods.

Plaintiff contends further that even if there was an enforceable contract, the sale was fraudulent because the buyer failed to take possession of the property before it was seized. We disagree.

■■ ■ Under the Code, "a 'sale' consists in the passing of title from the seller to the buyer for a price." (Ill. Rev. Stat. 1983, ch. 26, par. 2—106(1).) Subject only to the requirement that title to goods cannot pass under a contract for sale prior to their identification to the contract,[1] title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties. (Ill. Rev. Stat. 1983, ch. 26, par. 2—401(1).) Unless otherwise explicitly agreed, where, as here, delivery is to be made without moving the goods, if the goods are at the time of contracting already identified and no documents of title are to be delivered, title passes at the time and place of contracting. (Ill. Rev. Stat. 1983, ch. 26, par. 2—401(3)(b); *Peoria Harbor Marina v. Mc Glasson* (1982), 105 Ill. App. 3d 723, 727-28, 434 N.E.2d 786; *Puamier v. Barge BT* (1793) (E.D. Va. 1974), 395 F. Supp. 1019, 1029; *Southwest Bank v. Moritz* (1979), 203 Neb. 45, 55, 277 N.W.2d 430, 436.) Under the Code, it is of no consequence that delivery by the seller or payment by the buyer is deferred—the parties are free to agree as to the time of delivery and the terms of payment. Ill. Rev. Stat. 1983, ch. 26, pars. 2—309, 2—310, 2—503.

■ Notwithstanding the foregoing principles, however, subsection 2—402(2) of the Code provides that "[a] creditor of the seller may treat a sale *** as void if as against him a retention of possession by the seller is fraudulent under any rule of law of the state where the goods are situated ***." (Ill. Rev. Stat. 1983, ch. 26, par. 2—402(2).) In Illinois, an absolute sale of personal property must be evidenced by the purchaser taking possession of the property. A transfer of personal property, unaccompanied by a corresponding change of possession, is fraudulent *per se*, and void as to creditors and subsequent *bona fide* purchasers. *Wellington v. Heermans* (1884), 110 Ill. 564, 575; *Rozier v.*

---

[1]In the absence of explicit agreement, identification occurs when the contract is made, if it is for the sale of goods already existing and identified. Ill. Rev. Stat. 1983, ch. 26, par. 2—501(1)(a).

*Williams* (1879), 92 Ill. 187, 189; *Allen v. Carr* (1877), 85 Ill. 388, 389; *Ticknor v. Mc Clelland* (1877), 84 Ill. 471, 474; *Thompson v. Wilhite* (1876), 81 Ill. 356, 358.

The supreme court has implied that this rule of law does not apply to creditors and purchasers who have prior notice of the sale. (*Huschle v. Morris* (1890), 131 Ill. 587, 593, 23 N.E. 643; *Lefever v. Mires* (1876), 81 Ill. 456, 457; *Lewis v. Swift* (1870), 54 Ill. 436, 437; *Thompson v. Yeck* (1859), 21 Ill. 73, 74. See also *Lowe v. Matson* (1892), 140 Ill. 108, 114, 29 N.E. 1036.) After a thorough review of the relevant authorities, the appellate court, in *Lovejoy v. Raymond* (1906), 127 Ill. App. 519, held that "if the creditor or purchaser has notice of the rights of a prior purchaser not in possession before the levy [seizure] or before the second sale, the rights of such prior purchaser are dominant, and that in a contest for a possession of the property it will be awarded to him." (*Lovejoy v. Raymond* (1906), 127 Ill. App. 519, 522.) Later decisions are in accord. See *Doty v. O'Neill* (1933), 272 Ill. App. 212, 217; *Jacobson v. Patterson* (1914), 190 Ill. App. 266, 269; *Hiser v. Walbaum* (1906), 129 Ill. App. 82; *In re Enterprise Foundry Co.* (E.D. Ill. 1941), 37 F. Supp. 745.

■ The trial court found that plaintiff had been given notice of the sale of the office furniture and equipment before it filed its distress for rent action and seized the property. This finding is fully supported by the evidence presented at trial. Any conflicts in the testimony regarding the issue of notice were matters for the court, sitting as the trier of fact, to resolve. Upon our review of the record, we are unable to conclude that the trial court's resolution of that issue was erroneous. Accordingly, we find that the property defendant sold to the Chicago Tourism Council was not subject to distraint.

■ Finally, plaintiff argues that defendant lacked standing to challenge the seizure of property that had been sold to a third party. We note, however, that plaintiff did not question defendant's standing in the trial court until after all of the evidence had been heard. Moreover, it seems apparent that defendant, as the seller of the property plaintiff seized, had a legitimate interest in defending the integrity of the contract to which both defendant and the Chicago Tourism Council were bound.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

JIGANTI, P.J., and LINN, J., concur.